versus Belneftekhim. The fundamental error in this case is the following. required by the FSIA and this court's precedents and the precedents of other courts. He skipped one of the steps specifically. He failed to decide the organ prong of my argument under section 1603 B.2 under which an entity is an agency or an instrumentality of a foreign state if it is either an organ or owned by the foreign state. I made an undisputed legal showing based on the law of Belarus that my client qualifies under the five-factor test. Didn't the judge feel, one, that you had preserved only the ownership and said that you would bring up the organ later, but also say, in effect, that given the problems of translation and so on, even on that discovery was needed? No, he did not, Your Honor. I certainly made my showing on the organ factor. I put in that material in March. His rulings were in June. So my record was complete and undisputed, showing that I satisfy the five factors. And the discovery goes to the ownership and structure. That's the ownership prong. My understanding, though, is that you didn't get the dismissal judgment that we're reviewing. I'm sorry, the dismissal judgment that we're reviewing is not based on such a decision about sovereign immunity. Rather, it's based on the fact that that defense was thrown out altogether. So don't you have to first start by challenging whether the district court was correct in simply throwing out the defense as a sanction? I think the validity of the sanction depends on the underlying discovery order. And the underlying issue is whether the court should have granted my motion to dismiss. Well, how is that so? I mean, if you were challenging a discovery order, you should have sought leave to appeal that. I don't know how you just ignore it and violate it. But I did. I appealed from that. Right. And? I dismissed the appeal as lack of an appealable order. So? Now I have an appealable order. An order striking a defense of sovereign immunity is an appealable collateral order. Now, let me ask you a propos of that. There was also a monetary sanction. Yes, sir. Now, is that appealable? Or is it sufficiently intertwined with the order striking the defense so that it is appealable or is it separate? I believe it's clearly intertwined with the appealable order. The order to strike, therefore, brings up the discovery order and the monetary sanctions order because the first two orders, the discovery order and the monetary sanctions order, provide the foundation for the appealable order. You can't give meaningful review to the one without giving review to the other two. We could, for instance, say that the order striking the defense is incorrect because that should not be done until, even if discovery is proper, that should not be done until any number of other things are done, but that the monetary sanction might be all right. Is this working? Yes, it is. Not working? Yes, it is. Yes, Your Honor, a decision along those lines could be made. That's true. But the point here is it all comes back to the failure to address the organ point. Suppose we disagreed with you that your showing was so potent on the organ branch that no discovery is necessary. Suppose it seemed to us that there were disputed issues of fact about that. What do we do then? Well, in that case, you would go to the – first of all, I don't see how you could say that because I submitted purely issues of law, provisions of law. Yeah, but you submitted them based on the affidavit of somebody who works for your company. There's no intervention here or no amicus brief from the government of Belarus itself. There is a statement from an attorney for your client, as I understand it, who says these are documents from the government. But we don't know that that's true. It's disputed whether they're accurately translated. It's disputed whether they're just excerpts from decrees and not full texts of decrees. Why is that somehow unchallengeable? It's unchallengeable because I submitted statutes and executive branch resolutions, the translation of which on the organ issue are not disputed. All of his disputes on translation go to the ownership issue. And there is, by the way, a submission from the minister of justice. Well, there is now, but that's another complication because that only turns up so belatedly that it comes to us. So let's put that aside for one moment and let's get back to my question. Suppose we thought that there were disputed issues of fact about the organ aspect. What should we do then? Do we send it back to the district court so that you can have more discovery ordered on that issue, too? Or is there still some error because the district court didn't find that the organ theory was inadequately addressed? What happens then? I think then this court would turn to the ownership issue on which, once again, I believe that I made an undisputed showing as a matter of law. The law of Belarus says all of the assets of belneft.gov are property of the state. Let's come back to the question what is underlying, I think, Judge Lynch's question. If we don't agree with you and think discovery was appropriate, now, you know, I know you don't agree with that. But if we don't agree with you and think discovery was appropriate, what do we do then? Do we say that, okay, discovery was appropriate and the sanctions are appropriate? Or are there some sanctions that might be appropriate and some other sanctions that are not appropriate? If this court were to decide somehow that there were questions of fact on both prongs, organ and ownership, then I think you would remand and we'd have discovery. And I suppose I'd have no choice. Well, I mean, the district court thought you flouted the discovery orders. And so to that extent, it imposed a sanction. If we were to agree that the district court could order discovery to resolve these questions of fact, could it, in light of your refusal to comply, sanction you by dismissing the sovereign immunity defense? Well, it has that power, but I would hope that it would. Do you agree that it has the power to dismiss what is basically a question of jurisdiction? I can't dispute the language of Rule 37. It's one of the sanctions that's on the menu. I find that. But I would hope that I'd be heard again and make some effort to make this discovery, invoke the Hague Convention perhaps. There are other remedies. Rule 37 could also be understood to dismiss merits defenses, not jurisdictional defenses, a question I may ask your adversary. But as I understand it, you're not raising that argument. Well, I haven't so far, and it's a distinction that I haven't explored, but I would do so on that basis. Can I go back to the appellate jurisdiction argument for just a moment? I'm inclined to agree that dismissing a defense of sovereign immunity or precluding a defense of sovereign immunity is tantamount to deciding that issue and therefore would implicate the collateral order doctrine. Yes. Is that a question of first impression, though, or is there some authority that's addressed that? Because I could certainly see an argument that this is different because it's just discovery sanctions, and that's typically regarded as an interlocutory order. Well, in 1984, this court decided a case called Adirondack Railway, which involved the striking of the defense of sovereign immunity of the state of New York, and the court held, pardon me, striking an affirmative defense is interlocutory except in those rare situations where the defense asserts not merely immunity from judgment but immunity from the burden of having to defend the case. Well, I wasn't suggesting that we didn't have jurisdiction. I was suggesting a jurisdictional question. Yes. Yeah. So you're saying there is authority on that point? At Adirondack Railroad, and although it's not an FSIA case, FSIA gives that type of jurisdiction. Who? It's Adirondack Railroad versus who? Because I have a case called Swarna, and I wonder whether it's the same case or the one that or I found another one that. In Ray, Adirondack Railway Corp. I guess it's a bankruptcy. Yeah. There's another case called Swarna that does something rather like that. Right. It was not cited in either set of briefs. I think that Judge Kogan misunderstood the analytic framework for this type of case. He ordered discovery sua sponte. He said in doing so there's a preference, even a requirement, for jurisdictional discovery. The law is exactly the opposite under the FSIA, exactly the opposite. It's a presumption against discovery. Then when he ordered discovery for the second time, the order that led to the sanctions, he said the documents are discoverable because they're clearly relevant to the defense. That's the language of Rule 26b-1. That's not the language of the FSIA cases. FSIA cases decided by this Court say there must be a circumspect approach. Discovery is allowed only when it's necessary or crucial.  If I may, at least in your rebuttal, I would like you to focus on the question of whether if discovery was proper, it was proper at this stage of the game in discovery for the district court to strike the defense of sovereign immunity. That's what I would like you to focus on. You're making lots of good arguments, and I'm not sure I buy them. That's an argument that is important to me, so I hope you find some time to focus on it. May I be sure I understand? Your Honor's question goes to the following scenario. The Court holds that discovery was proper, yet striking the defense was an excessive sanction. That's the question of whether under the circumstances, at this time, that sanction was excessive. All right. I know you want to reserve three minutes for rebuttal, so let's hear from your adversary. Thank you, Your Honors. Good morning, Your Honors. This is the Court. My name is Emmanuel Zeltser. I'm a plaintiff and counsel for a police before this honorable court. I apologize for my accent if there is anything. That's all right. Thank you. Mr. Zeltser, the question I was pursuing with Mr. Caruso that I want to ask you is that sovereign immunity is a defense to the court's jurisdiction, the district court's jurisdiction. If the defendants are entitled to sovereign immunity, the court has no jurisdiction unless it comes within an FSIA case. How does the court dismiss a sovereign immunity defense as a sanction? Doesn't the court always have to decide whether it has jurisdiction in the case? I believe, Your Honor, that Judge Cogan did decide that. However, there is only— How did it decide that? It dismissed the sovereign immunity defense, which was not a decision on the merits. He never decided whether they had sovereign immunity or didn't. He said that defense is going to be thrown out, not heard. What was Judge Cogan to do? He several times— A decision made, it would have to look at the facts before it. It could perhaps draw adverse inferences against parties who didn't comply with discovery. I mean, I'm just throwing these out as possibilities. That's what I believe. And then rule on whether or not there was sovereign immunity. That's what I believe, Your Honor. Judge Cogan did. He drew adverse interest. How could it rule on sovereign immunity without the facts that he himself had said were necessary to decide whether sovereign immunity was there? I mean, let's take it step by step. Judge Cogan said we need discovery to find out if there is sovereign immunity. He then finds that appellants did not comply with discovery. By the very fact of his situation, he cannot know whether there is sovereign immunity or not because he said, I need discovery to find it out. So at that point, as a sanction, he throws out sovereign immunity. Now, that's the question that is troublesome to us because that was the very thing that the discovery was there to find out. Your Honor, Judge Cogan did say that, and Judge Cogan ordered discovery several times. Defendants didn't comply. Judge Cogan was unable to obtain discovery. There are any number of other sanctions that are possible. And short of ruling at the sanction level on the jurisdictional question for which he was doing discovery. I mean, he did do money sanctions. He could have done more money sanctions. Well, the presider gave you a list of things that he might have done by way of sanctioning, by way of getting discovery short of deciding the jurisdictional issue as a sanction. And what if all those sanctions failed, which they did? No. No, you didn't listen to the one I suggested, which is could he have said, okay, you were told to produce A, B, and C. This is to the defendant. You did not. Therefore, I will draw an adverse inference that what you would have produced would have been adverse to you. The law does this sometimes, and I'm asking you whether that could have been done. And then, assuming those adverse facts, he would have ruled on the totality of the record as to whether the defendants had sovereign immunity or not. But that at least decides the court's jurisdiction. It doesn't avoid the question as a sanction. My view, Your Honor. You know, it might have been a decision favorable to you, but it would have been reached in a different way without avoiding the court deciding its jurisdiction. I understand and I agree, Your Honor. I believe at least that's the way I perceive that the court in reality did draw an adverse inference without actually saying that. Is drawing an adverse inference an appropriate sanction in that situation, or were there other sanctions that could have been drawn or could have been used before going that far? I mean, one of the questions we always have with respect to sanctions is, is this what is needed to get the person to do what you want them to do? If a party defies willfully, as Judge Kogan found, willfully defies three orders, one after another, accumulates over $100,000 in monetary sanctions, what else? Judge Kogan, I think, rather than giving us a default judgment, which we asked for, I think he went very, very slowly until he finally reached, he could not decide. And, Your Honor, if I may, just for a second, I'd like to address what Mr. Caruso was trying to present, and that was the document that just came in, okay? And Your Honor correctly stated it just came in, it shouldn't be, I don't believe it should be admitted. However, it's still an important document, and here is why, and it goes directly to Judge Kogan's decision. Now, the document says, it's not really an interpretation of Belarusian law, just a statement and new evidence, and important portion of that new evidence appears on page 14 of the PDF, where it says number of employees, 165. Now, we're talking about a company which has 130,000 employees, responsible for one-third of industrial output of country of Belarus, owns refineries, multiple manufacturing facilities, about 2,000 gas stations all around Europe. It does not have 165 employees. That goes to the very issue here. There are two entities doing business under the same name, one that has 165 employees, okay? Not the one I sued. I sued the multi-billion dollar conglomerate. It has over 100,000 employees, and this is what we've been arguing throughout this case from the very beginning. This is why Judge Kogan didn't buy this shell game whenever they need to sell stock. All of a sudden, it's a commercial company, international conglomerate, and whenever they get sued for converting that stock back, all of a sudden, it's a little country with 165 employees, governmental agency. Which one is it? All of this goes, doesn't it, to whether there is sovereign immunity or not, doesn't it? I mean, this is really you are arguing that there are reasons why there might not be sovereign immunity. Is that what you're saying to us? That's the basis of what you're arguing. Then you're arguing the merits underneath that. The first question we always have to decide is, is there sovereign immunity or not? Now, there are problems here because one of the companies is an American company, one is not, and so on. The whole question of sovereign immunity is a very complex one, which is why the district court ordered discovery on it. Our question is, what do we do when the discovery failed? That's the thing that's before us now. Well, I have exactly, Your Honor, I have exactly the same question. If they continue to resist discovery, they're not producing it. What do we do at that point? Another monetary sanction? Is that the point where we are now, where the judge was, or is that what we might have to decide if we go back and the judge sanctions in some way short of deciding the issue and they continue not to follow discovery? Should we decide things about what might happen if they don't do it? Well, we know what did happen, Your Honor. Three orders willfully defied. There is no reason to believe that the fourth order will be complied with. Let me ask you a few questions about burden. As I understand Mr. Caruso's argument, he's suggesting that there is no jurisdiction for a court to order discovery when a colorable claim of sovereign immunity has been raised. That's part of what the court doesn't have jurisdiction to do. Do you want to respond to that question first? Yes, Your Honor. Even coming to this court is not proper because he is not indefinite. He's not suggesting that the district court could not order discovery to resolve the sovereign immunity issue. It had to do it based on the papers the parties produced and then assigning the burdens as the law does. All right. Belny of TK, whichever one of the two it is, is not an undisputed sovereign. Now, Mr. Caruso used the word undisputed and I was sitting wondering what is undisputed. I believe there is nothing undisputed here. It's an alleged sovereign, not undisputed. So, anybody who alleges, it's not the country of Belarus. You had the burden on that. Obviously. Did you have the burden to show that you had jurisdiction or did they have the burden to show that they qualified under foreign sovereign immunity? Certainly, the one who is proffering the defense of sovereign immunity has the burden to prove it. And there are cases in this court, many of them. Do they have the burden of proving it or do they have the burden of introducing enough evidence so that it seems likely that they have it at which point the burden might shift to you? That is, it often is the case that an initial burden of pleading and an initial burden of allegations and of bringing some facts are on one side, but that that is enough then to shift the burden to the other side. That happens all the time. And the question is, is that what we are dealing with here or not? We, plaintiffs, certainly introduced, and that is the reason why Judge Kogan did what he did, we certainly introduced evidence where the second-in-command, Belyaev Tikhim, admitted publicly that it is not a governmental entity and even criticized the press for saying it is because it makes it more difficult for them to sell stock. We introduced the fact that we, the plaintiffs, bought stock equity interest from Belyaev Tikhim. So we certainly did our part to sustain our burden of showing, no, it is not. But opposing counsel says that even if you did this with respect to the ownership theory of sovereign immunity, they then produced material which were enough to meet their burden with respect to the organ theory. And the question then is, was the organ theory properly before the court? And if it was properly before the court, at that point was it your burden to bring in evidence against the organ theory or was it their burden still to show that the organ theory was really fulfilled? So we are right back to the same question of whose burden is it at that point. I'll be very happy to respond because nothing other than what was produced was produced with respect to organ factor. And the statement that was made by the deputy chairman of Belyaev Tikhim applies equally to the ownership and organ. He clearly stated it's a privately owned company. We sell stock in that company. It certainly is not an organ then. So we did demonstrate that. And other than those incorrect, faulty translations, Mr. Caruso produced nothing with respect to either ownership or organ. It's a lot easier for me to defend against the organ. It is not an organ. Maybe there is something governmental in this 165-people entity that Mr. Caruso just now improperly introduced, but certainly not an over 100,000-employee giant conglomerate. All right. I think we have your argument. We're going to hear now from Mr. Caruso in rebuttal. Thank you. Thank you, Your Honor. Your Honor, let me begin with this burden point because I think it's very important, and I believe the law is well established. The Robinson case says this for this Court, and there are at least two or three others aloft stuck for the names at the moment. The party asserting sovereign immunity has the burden of going forward with evidence and making a prima facie case of status as a foreign state. Once the prima facie case is made, the burden shifts to the plaintiff to show that either there's an exception to sovereign immunity or some other reason why sovereign immunity shouldn't apply. The ultimate burden of persuasion rests on me, the party asserting sovereign immunity. I carried my burden. I made a submission of 17 provisions of the law of Belarus that show all of the assets are owned by the Republic of Belarus and that the five organ factors all apply. It's created for a national purpose to improve the petroleum sector. My client has regulatory powers to set prices and license trade, etc. I don't think there can be the slightest doubt that I carried my burden of production. Then it shifts to Mr. Beseltzer, and he put in nothing. At that point, the district court said, this gets us somewhere, but I need to know more through discovery, and discovery is needed, perhaps so the opposing party can meet its burden. Now, is that incorrect? That is incorrect, and that is Judge Kogan's fundamental error. He should have ruled on the organ prong, because under the FSIA, the court has to look for a way to avoid the burdens of discovery and the burdens of litigation on a party that has shown that it has at least a prima facie case of sovereignty, and I showed that. Judge Kogan, the FSIA requires a certain sequencing. 1603 defines the foreign state and agency and instrumentality. If you satisfy 1603, you presumptively have immunity under 1604, and then you look at 1605 to see if there are any exceptions. I think it's essential. Counsel. Yes. You concede that there may be some situations, I know you're denying that this is one, in which you meet a prima facie case that there may be sovereign immunity, but there is enough doubt about what you have brought in so that it is appropriate for the court to order discovery. Do you say that that is the two things are inconsistent, or do you say that this might be a case? And then the question is, was it this way in this case, which you say no, or was it not in which case you say yes? I think that there certainly is a possibility that there could be jurisdictional discovery in a case, even when there's been a prima facie showing, if the dispute is one of fact. But here the dispute is not one of fact. I've made a purely legal submission, and intentionally so. So if there's no dispute on the law because he hasn't challenged it, but even if there were, a dispute on the law doesn't get you discovery. There could be such a case, Your Honor, yes, but only if there was a dispute on the facts. And Judge Lynch, may I just go to one point that you made, which I think it's extremely important. You described, maybe criticized, my submission as merely a party submission. I'm going to suggest to you that no court has ever suggested that under the FSIA, or the Act of State Doctrine, a government submission is required. All these cases involve party submissions, all of them. And I'm going to suggest to you, Your Honor, that if you think… The Act of State Doctrine depends on there being an act of state. And it's my understanding that Mr. Zeltser disputes some of, for example, the authenticity of documents, or disputes the translation of those documents. It's one thing if the government of Belarus says, no, this is our law, this is what the answer is, this is what we believe our law provides. I don't know that that is something that he would be able to challenge. But if a party comes in and says, here's a statute of Belarus, isn't there a question as to whether that is or is not a legitimate statute? Is there not a question as to whether it's been repealed since, or the law has changed? But he didn't put in any showing in that respect. His argument was, these laws are unreliable. That sort of argument… That sort of argument, I agree, is not available under the Act of State. But that's what he argued. He didn't say, oh, no, that's not inaccurate. That's not the law. Translations are inaccurate. Okay. Let's talk about the translations. That's very interesting. Translations are inaccurate. The BNDK actually consists of two components, and that it's effectively owned by its member companies. Right. These are the questions that then led Judge Kogan to say, well, there needed to be discovery on the structure and organization of these companies. First of all, that ignores the organ problem on which there's no dispute about my translations and which standing alone is sufficient to grant my motion. But let me talk about, let me respond to Your Honor. The translations, my translations carried my prima facie burden. If he disputes my translations, his… Is that a question of fact? The validity of translation, how good the translations are, is that a question of law or a question of fact? When they don't put in a competing translation, it's a question of law. I mean, here's my point. At this stage, after I carried my prima facie burden, Mr. Zeltzer's burden is to put in a competing translation, not simply to dispute mine, and he didn't do that. And that's why I think there's no question of fact there. Okay. It would be a question of fact. You're saying that the question of fact was not raised, but it is a question of fact. It could be. Then it is up to whether the judge below thinks that there was enough to raise the question of fact. Yes. And if it is a question of fact, then discovery is allowed. It could be. It could be, yes. It could be. You earlier conceded. Yes. It unquestions the fact. Yes. Your Honor, second point about the two companies, there are two Belknap-Eckhams. I will say as little as possible about that. It's implausible under Twombly-Iqbal concepts. There's no support for it. I mean, I could go further and say it's fanciful. It's just one way of Mr. Zeltzer trying to avoid the reality of the law of Belarus. I assure you that the Minister of Justice of Belarus would be shocked to think, to learn, to be very surprised to learn, oh, there are really two companies. The answer to this was, I made discovery on this point. The discovery, judge ordered me to answer interrogatory number seven, inquiring about the subsidiaries of Concerned Belknap-Eckham, and here's the answer. None of the constituent entities of Concerned Belknap-Eckham is a subsidiary. Concerned Belknap-Eckham does not own a stock or any assets of those companies. The constituent entities are independent legal entities over which Belknap-Eckham exercises state-related management and administrative responsibilities. That's why it should be obvious that there are 165 employees at this entity that does the supervision, and then all these thousands of people who work for separate companies that my client doesn't own. So much for destruction. Counsel? Yes, sir. I asked you to address something in your reply. Indeed. And your red light has been on a very long time. Could you please turn to what I asked? Yes, I will do, and I think that it's a very good point. Lesser sanctions should have been considered, and I believe that this dovetails with what Judge Radji was saying about there's a lack of jurisdiction to impose sanctions, or put affirmatively, the court has to first find that it has subject matter jurisdiction, and for that matter personal jurisdiction, in order to impose sanctions. And Judge Kogan never made those findings. He never really said, strike really, he never said why he couldn't rule on the organ prom, for example. So I think at the very least there should be a remand with instructions for Judge Kogan to proceed as required by the FSIA. Are you saying that the judge can't impose any sanctions at all if the question of jurisdiction is uncertain and requires discovery? That is, there's a difference between the monetary sanctions, which do not destroy the jurisdiction, do not go to the essence of the thing, and the sanction that decides the question of jurisdiction in a way that no. No, I'm not saying there can't be any sanctions, but I would agree with what Judge Radji said, that there must be sanctions short of dismissal of a jurisdictional defense, because the court first has to have jurisdiction. One last question, Mr. Crusoe. Where do we stand with the question of whether even if the entity is owned by or an organ, it was involved in commercial activity? Right. We don't have an answer on that, right? That's not before this court yet. No, but I mean, so this would be, if we were to agree with all of your arguments, this would be a remand and that issue would still be before the district court, right? Precisely. Okay. Precisely. One last point. If Your Honor, if the court is going to accept this concept that a party submission is insufficient, I suggest that that would be sufficiently new that there should be a remand to give me a chance to make a government submission. That's never been required in a case like this, but if you are going to, I'd appreciate a remand for an opportunity. Thank you. Thank you very much. Thank you. We'll take the matter under advisement.